UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD LINDEN as personal
representative of the ESTATE OF
FRANCIS CZAPLICKI, deceased,

    Plaintiff,                                             Case No. 03-71479

v.                                                      Honorable Patrick J. Duggan

HARDING TUBE CORP.,

    Defendant/Third-Party Plaintiff/
    Third Party Counter-Defendant,

v.

ADP COBRA SERVICES, INC.,

    Third-Party Defendant/Third Party
    Counter-Plaintiff.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on SEPTEMBER 28, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On April 15, 2003, Francis Czaplicki ("Mr. Czaplicki") filed this lawsuit under

Section 1132(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"),

as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985

1

("COBRA"), 29 U.S.C. §§ 1161-69.  Mr. Czaplicki claimed that his former employer, Defendant Harding Tube Corporation ("Harding Tube"), failed to timely notify him of his rights to continued medical insurance coverage and therefore prevented him for receiving coverage under COBRA.[1]  Harding Tube filed a cross-complaint against ADP COBRA Services, Inc. ("ADP"), claiming that any denial of coverage to Mr. Czaplicki arose out of ADP's failure to timely notify him of his right to continued medical benefits and the amount of premiums due to continue such benefits.  Harding Tube alleged that ADP was obligated to "protect, hold harmless and indemnify" Harding Tube pursuant to the COBRA services agreement between the parties.  ADP filed a third-party counter-complaint against Harding Tube, asserting that Harding Tube violated the services agreement by failing to timely notify ADP of the event triggering Mr. Czaplicki's right to COBRA coverage.

The representative of Mr. Czaplicki's estate ("Plaintiff") and Harding Tube initially filed separate motions for summary judgment on August 2, 2004.  The Court held a hearing on the motions on October 14, 2004.  As the Court indicated at the hearing, it believed the parties had not developed the facts sufficiently for the Court to determine why Mr. Czaplicki's insurance coverage was denied by the insurance company and therefore which, if any, party's actions resulted in the denial of coverage.  The Court therefore directed the parties to conduct additional discovery and file, if they wished to do

---

[1] In late November 2003, Mr. Czaplicki passed away and Howard Linden was appointed as personal representative of his estate.  Mr. Linden subsequently moved for substitution of party, which this Court granted on April 30, 2004.

so, additional pleadings.

The parties conducted additional discovery and Plaintiff and Harding Tube filed renewed motions for summary judgment on August 5 and 19, 2005, respectively. As it did before, Plaintiff seeks summary judgment with respect to its claim against Harding Tube. In its response, Harding Tube asks the Court to deny Plaintiff's motion for summary judgment and dismiss its complaint. In its motion for summary judgment, Harding Tube asks the Court to find in its favor with respect to its third-party complaint against ADP and ADP's third-party complaint against Harding Tube. The Court held a hearing on the renewed motions for summary judgment on September 21, 2005.

**I.     Factual Background**

Harding Tube first employed Mr. Czaplicki in 1989. Mr. Czaplicki worked for Harding Tube on and off for several years. After May 15, 2001, Mr. Czaplicki failed to report for work. However, due to his prior work history, Harding Tube only terminated his employment on June 15, 2001, when he still had not returned to his position. Harding Tube continued to carry Mr. Czaplicki under its medical and dental coverage until June 30, 2001. Coverage under Harding Tube's medical plan was provided under the Selectcare HMO Group Medical Insurance Plan ("Selectcare").

On July 26, 2001, Mr. Czaplicki was admitted to Huron Valley Hospital ("hospital"). The hospital uses a company called MedAssist, Inc. ("MedAssist") to help its patients qualify for Medicaid or obtain insurance coverage. Upon learning that Mr. Czaplicki had not been offered COBRA benefits, MedAssist sent by facsimile ("fax") a generic election form to Harding Tube on August 29, 2001. This form indicates that Mr.

Czaplicki wishes to elect COBRA continuation coverage and requests COBRA election notification and any other related correspondence to be sent to MedAssist.

Pursuant to a "COBRA Service Agreement" executed on July 1, 1995,[2] ADP provides COBRA administration services for Harding Tube. Therefore after receiving MedAssist's August 29 fax, Harding Tube faxed ADP a COBRA transmittal form indicating that Mr. Czaplicki's employment terminated on June 15, 2001, he previously had medical and dental coverage, and he wanted to continue his insurance through COBRA. Harding Tube also provided ADP with the name and address of Mr. Czaplicki's COBRA representative, MedAssist.

ADP sent a notice to Mr. Czaplicki at MedAssist's address on November 7, 2001, offering him continued dental and medical coverage. ADP also included a payment coupon, requiring payment in the amount of $1,016.60 by December 1, 2001, for COBRA coverage for the period of July 1 through November 30, 2001. By certified mail, MedAssist sent ADP a check in the amount of $632.68 to provide coverage for Mr. Czaplicki from July 1 through September 30, 2001.[3]

According to ADP, after it received payment from MedAssist to activate coverage for Mr. Czaplicki from June 30 through September 30, 2001, it deposited MedAssist's payment. ADP claims that on January 9, 2002, it sent a check (Check No. 118015) for

---

[2]Harding Tube's initial COBRA service agreement was with Cobra Administrative Services ("CAS"). ADP is the successor to CAS.

[3]Because Mr. Czaplicki had been discharged from the hospital in late September 2001, MedAssist only sought coverage up to that date. *See* Pl.'s Mot. Ex. F.

4

$597.99 to Harding Tube via regular United States mail.[4]  *See* Pl.'s Mot. Ex. 1 Answer to Interrogatory 11(a)(iv).  Harding Tube claims it never received nor cashed ADP's Check No. 118015.  *See* Harding Tube's Mot. Ex. 18 ¶ 1.  ADP acknowledges that the check never was cashed.  *See* Pl.'s Mot. Ex. 2 Answer to Interrogatory 1.

The terms of the COBRA Service Agreement between ADP and Harding Tube required ADP to receive all COBRA premiums and then to forward all premiums to Harding Tube for payment to Harding Tube's healthcare provider.  *See* Pl.'s Mot. Ex. 2 Answer to Interrogatory 4(c).

## II.     Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

---

[4]MedAssist sent ADP a check in the amount of $632.68.  The amount actually due only was $609.96, representing $597.99 due to Selectcare and a 2% administrative fee charged by ADP.  *See* Pl.'s Mot. Ex. 2 Answer to Interrogatory 5.  ADP reimbursed MedAssist for the $22.72 overpayment.  *See id*.

5

material fact." *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

      The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.  The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

### III.   Plaintiff's Motion for Summary Judgment

      In its initial motion for summary judgment, Plaintiff argued that Harding Tube was liable for the damages suffered as a result of Mr. Czaplicki not receiving COBRA coverage because Harding Tube failed to timely notify ADP of Mr. Czaplicki's termination within the time period set forth in ERISA.  Having conducted discovery, however, Plaintiff now focuses on the alleged failure of Harding Tube to timely pay Selectcare the premium required to activate Mr. Czaplicki's COBRA coverage.  In response to Plaintiff's motion, Harding Tube does not deny that Selectcare was not timely paid.  Harding Tube argues, however, that (at most) its duty was to pay the premiums to Selectcare *if* it had received those premiums from ADP.  Harding Tube further asserts that, if it is liable to Plaintiff, Plaintiff only should recover the amount it would have received if COBRA coverage had been activated.  In other words, Harding Tube contends

6

that Plaintiff only should be awarded the amount the hospital would have charged Selectcare $62,923.45 for the services rendered to Mr. Czaplicki pursuant to an agreement between those entities. Plaintiff instead is seeking reimbursement for $95,538.64– the amount it charges uninsured patients.

The initial paragraph of COBRA provides: "The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). Plaintiff claims that Harding Tube is the plan sponsor, as that term is defined under ERISA, 29 U.S.C. § 1002(16)(B).[5] Harding Tube does not challenge this assertion.

ERISA further provides a series of deadlines following a qualifying event (e.g. termination) that an employer, plan administrator, and former employee must follow to effectuate COBRA coverage. *See* 29 U.S.C. §§ 1165-66. Plaintiff asserts that Harding Tube, as the employer and plan administrator pursuant to 29 U.S.C. § 1002(16)(A), did not comply with these deadlines.[6] Harding Tube does not challenge Plaintiff's assertion

---

[5]As relevant to the pending case, the statute defines the term "plan sponsor" as "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B).

[6]ERISA provides that the term "administrator" means "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A). According to Plaintiff, Harding Tube has not provided any plan document, designating any entity as the administrator of Harding Tube's healthcare plan. Pursuant to subsection (ii), therefore, it would appear that Harding Tube is the administrator. Plaintiff further points to Selectcare's Operating Manual which refers to the employer as the Plan Administrator responsible for administering COBRA.

that it is the plan administrator.

Plaintiff has sued Harding Tube pursuant to 29 U.S.C. § 1132(a)(3) to redress the latter's failure to comply with COBRA's regulations.  There is no dispute that the regulations were violated– Harding Tube or ADP failed to notify Selectcare of Mr. Czaplicki's COBRA continuation coverage and to pay Selectcare the premium necessary to activate that coverage.  As the plan sponsor and plan administrator, Harding Tube initially is liable for these violations.  The Court therefore concludes that Plaintiff is entitled to summary judgment with respect to its claim against Harding Tube.

With respect to the amount of damages, the remedies available for a COBRA violation are found in 29 U.S.C. § 1132, the statute's civil enforcement section.  Pursuant to Section 1132(a)(3), the provision cited in Plaintiff's complaint, Plaintiff is entitled "to obtain other appropriate equitable relief" to redress violations of the statute.  29 U.S.C. § 1132(a)(3)(B).  The statute further provides that "the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132(c)(3).

In cases where COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to medical expenses minus deductibles and premiums.  As one district court in the Sixth Circuit has explained:

---

*See* Pl.'s Mot. Ex. 3.  With respect to ADP, the Sixth Circuit noted in *McDowell v. Krawchison*, 125 F.3d 954, 962 n.7 (6th Cir. 1997), that the term "plan administrator" as used in ERISA and COBRA "does not refer merely to a person who performs clerical administration related to a benefit plan, but rather to the entity charged with overall management of the plan."

8

> Compensatory damages available under COBRA are typically calculated by referring to the relevant insurance contract. Courts look to the insurance coverage for medical bills which could have been secured by plaintiffs had they received timely notice, minus the cost of any premiums or deductibles.

*Vargas v. Child Dev. Council of Franklin County*, 269 F. Supp.2d 954, 957 (S.D. Ohio 2003); *see also Holford v. Exhibit Design Consultants*, 218 F. Supp.2d 901, 907 (W.D. Mich. 2001); *Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp.2d 1032, 1042 (S.D. Ohio 2001).  As the *Chenoweth* court further noted, "'the purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation.'" 159 F. Supp.2d at 1041 (quoting *Van Hoove v. Mid-America Bldg. Maintenance, Inc.*, 841 F. Supp. 1523, 1536 (D. Kan. 1993)).

     Based on the above, the Court concludes that Plaintiff only is entitled to the amount Selectcare would have paid if COBRA coverage had been secured for Mr. Czaplicki.  According to Harding Tube, Selectcare only would have paid the hospital– and the hospital would have accepted– $62,923.45 as payment in full for services rendered to Mr. Czaplicki, pursuant to a contractual agreement between the hospital and Selectcare whereby the former agreed to accept discounted rates as payment in full.  *See* Harding Tube's Resp. to Pl.'s 8/2/04 Mot., Ex. 13.  Plaintiff does not dispute that the hospital only would have recovered $62,923.45 from Selectcare, but argues that the hospital has no obligation to provide the same discount to uninsured patients like Mr. Czaplicki.  Awarding Plaintiff more than $62,935.45, however, would put it in a better position than it would have been but for the violation.  *See Chenoweth*, *supra*.  Thus the Court concludes that Plaintiff only is entitled to compensatory damages totaling

9

$62,923.45.[7]

## IV.  Harding Tube's Motion for Summary Judgment

Harding Tube seeks summary judgment with respect to its claim for indemnification against ADP, arguing that ADP's actions and not Harding Tube's actions caused Selectcare to deny COBRA coverage to Mr. Czaplicki.  Harding Tube also seeks summary judgment with respect to ADP's counterclaim against it.[8]  At this stage in the proceedings it appears that Mr. Czaplicki did not receive COBRA coverage because the premium MedAssist paid to activate coverage was never sent to Selectcare and Selectcare was never notified that Mr. Czaplicki needed to be added to Harding Tube's plan.  ADP claims that after it deposited MedAssist's payment, it sent Harding Tube a check for the premium due to Selectcare.  Harding Tube claims it never received this check and the check, in fact, was never deposited or cashed.

Exhibit C of the COBRA Service Agreement sets forth ADP's obligations with respect to premiums.  *See* Harding Tube's Mot. Ex. 19.  According to Section B, ADP was responsible for sending bills to qualified beneficiaries.  *See id*.  ADP was to instruct qualified beneficiaries "to make all premium payments payable to the order of [ADP]."

---

[7]MedAssist paid the premium for insurance coverage and that amount was never refunded to it, despite the fact that coverage never was activated.  Thus the Court will not deduct the cost of any premiums from the medical bill total.

[8]In its counter-complaint against Harding Tube, ADP asserts that Harding Tube breached the COBRA Service Agreement by not providing timely notice of a qualifying event and failing to provide correct, complete, and/or timely information to ADP.  *See* ADP's Counter-Third Party Compl. ¶ 12.  ADP therefore argues that Harding Tube is responsible for any claim by Plaintiff and, pursuant to the COBRA Service Agreement, is obligated to pay ADP's costs and attorney's fees in defending against Harding Tube's claims.  *See id*. ¶ 13.

*See id.* After verifying that the checks had cleared, ADP was obligated to send Harding Tube an ADP check for the premiums due from Harding Tube to the insurance company. *See id.* Pursuant to Section 6(a) of the agreement, ADP agreed to indemnify Harding Tube for "any penalties, losses, damages, costs, expenses, reasonable attorney's fees, and court costs" suffered by Harding Tube resulting from the "acts, errors, malfeasance . . . negligent acts of [ADP] arising out of its performance of COBRA administration services . . ." *See id*. at 4, Section 6(a). Similarly, Harding Tube agreed to indemnify ADP for any attorney's fees and court costs suffered by ADP as a result of Harding Tube's administration of COBRA requirements. *See id*. at 4, Section 6(c).

The Court finds a genuine issue of material fact with respect to whether the actions of ADP or Harding Tube resulted in Mr. Czaplicki not receiving COBRA continuation coverage. If ADP sent a check to Harding Tube for the premium paid by MedAssist and Harding Tube failed to pay Selectcare, it appears that Harding Tube is not entitled to judgment with respect to its claim against ADP. As well, ADP would be entitled to indemnification from Harding Tube for its attorney's fees and costs in this litigation. If, however, ADP never sent a check to Harding Tube, it appears that ADP would be liable to Harding Tube and its counter-complaint should be dismissed.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Harding Tube's motion for summary

judgment is **DENIED**.⁹

                                                                         _____

                                                                         s/PATRICK J. DUGGAN
                                                                         UNITED STATES DISTRICT JUDGE

Copies to:
Douglas A. Firth, Esq.
James E. Brenner, Esq.
Mark T. Nelson, Esq.

---

⁹In its response to Harding Tube's motion for summary judgment, ADP requests summary judgment with respect to Harding Tube's Third-Party Complaint against ADP and with respect to ADP's Third-Party Counter-Complaint against Harding Tube. For the reasons set forth in this Opinion and Order, ADP's request also is denied.